UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted March 28, 2006[*]
Decided March 29, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-2353

| | |
|---|---|
| FRED NANCE, JR.,<br>*Plaintiff-Appellant,*<br><br>*v.*<br><br>CHICAGO CHRISTIAN<br>INDUSTRIAL LEAGUE, et al.,<br>*Defendants-Appellees.* | Appeal from the United States<br>District Court for the Northern<br>District of Illinois, Eastern Division<br><br>No. 04 C 1833<br><br>Elaine E. Bucklo,<br>Judge. |

**ORDER**

Pro se appellant Fred Nance, Jr., sued his former employer, Chicago Christian Industrial League (CCIL), alleging that the agency discriminated against him on the basis of race, sex, and age, and that he suffered sexual harassment amounting to a hostile work environment. The district court granted summary judgment to CCIL, concluding that Nance failed to show that any employee was similarly situated, and that the alleged harassment was neither attributable to his

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

FILED
APR 2 1 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

No. 05-2353 Page 2

gender nor severe and pervasive enough to give rise to liability under Title VII. We affirm.

CCIL is a social service agency that provides food, clothing, shelter, counseling, and job training for the homeless. Nance, who is black, was hired in November 2002 to fill one of several positions as a case manager in CCIL's Single Adult Program. He was then 53 years old.

Nance got off on the wrong foot with several of his coworkers by informing them that he was working on a Ph. D. in Social Policy Analysis and Planning and that CCIL Associate Director Felix Matlock had given him permission to collect data on the agency's clients for his dissertation. Two members of the staff, in particular, resented the fact that he identified more with the interns who came to CCIL to work on projects toward advanced degrees than with the rest of the permanent staff. According to Nance, these staff members—black women—complained to management and colleagues that he was neglecting his job responsibilities in favor of the Ph.D., and attempted to undermine his authority with clients. In July 2003, Associate Director Matlock asked Nance to choose another organization as the subject of his dissertation because he was concerned about the "impression" among the staff that Nance's "primary work" was the dissertation.

According to CCIL, Nance also had difficulty in dealing with the agency's homeless clients. Nance himself acknowledges that in February 2003 he was warned by his supervisor that management had received "numerous complaints" that he was "yelling at clients" and behaving in other ways that were unacceptable. But Nance is certain that the problem was resolved. The proof, as he sees it, is that in June 2003 he received a "certificate of appreciation" from CCIL's Executive Director for his "years of dedicated service to Chicago's Homeless." Further, Nance points to the fact that in May 2003 he was moved into the newly created position of Policy and Procedure Analyst in the Education Department. There he was under the direct supervision of Associate Director Matlock, who, Nance contends, created the position for him in recognition of his dissertation research on social policy. Nance perceived the move as somewhat of a promotion, though by his own admission, it involved "diminished" duties and no increase in salary. CCIL, however, claims that it moved Nance into the new position so that he would have less direct contact with clients.

In August 2003 CCIL once again considered moving Nance. By the end of the month, however, management had concluded that a reduction in force was necessary because of a shortfall in donations and other revenues. The agency decided to cut two of its case-manager positions and eliminate the position of Policy and Procedure Analyst.

FILED

APR 21 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

No. 05-2353 Page 3

The case managers laid off with Nance were a black female, aged 40 (she was later rehired), and a black female, aged 31. CCIL chose to retain as case managers two black males, aged 52, and one black male, aged 51; two black females, aged 60 and 44, respectively; and one white female, aged 43. Remaining in the Education Department were a black male, aged 70, and a black female, aged 35. Two of these employees had seniority equal to or lesser than Nance's: the white female case manager had been hired on the same day as Nance, and the black female, aged 60, was still in her 90-day probationary period.

In March 2004 Nance filed suit against CCIL under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* Nance argues that CCIL discriminated against him when it forbade him to collect data "to pursue his educational goals," while allowing younger, white, and mostly female interns to do so, and when it terminated him while retaining a white female of equal seniority and a black female of lesser seniority. In addition, in his view, CCIL discriminated against him again several months later when it chose to rehire the 40-year-old black female and did not rehire him. Finally, Nance claims that he was subjected to sexual harassment and a hostile work environment by the two female coworkers who contended that he was neglecting his work for CCIL.

On appeal Nance argues that the district court erred in failing to recognize that the eight persons he identified (five interns and three case managers) were similarly situated to him under the factors listed in *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002), including whether the employees worked under the same supervisor, whether they were held to the same standards, and whether they had the same education, experience, and other qualifications. Nance here focuses on the interns, contending that their academic projects were supervised by Associate Director Matlock, just as his was; that they were all engaged in the same sort of data collection; and that they were subject to the same academic and professional standards. *See id.* But it is not enough for him to show that he can meet these criteria because the test for demonstrating that another employee is similarly situated embraces all relevant factors, the number of which will depend on the particular facts of the case. *Id.*; *see also Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). Nance's problem is that he does not show that the characteristics he shared with the interns were relevant to his position. *See id.*

Nor does he show that he was similarly situated to the case managers with less seniority who were retained after he was terminated. At the time he was laid off, he was no longer a case manager but was serving as Policy and Procedure Analyst. We said in *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir. 1999), that job titles are not determinative of whether an employee is similarly situated. And even the job responsibilities might not be decisive if we were persuaded that

No. 05-2353 Page 4

CCIL moved Nance simply to insulate itself from claims of discrimination before terminating him. *See id.* But Nance does not argue any such thing; he insists that the position involved real responsibilities and that it was intended to benefit both him and CCIL. Considering the evidence in the light most favorable to Nance, we agree with the district court that no one was similarly situated to him.

Furthermore, there would be no reason to disturb the grant of summary judgment, even if Nance had succeeded in establishing his prima facie case, because the evidence he offers to rebut CCIL's asserted reason for terminating him is too weak to support an inference of pretext. A plaintiff may avoid summary judgment by placing the employer's explanation in doubt. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005); *Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003). But Nance's claims that Associate Director Matlock spoke to him about transferring to another department just four days before the announcement of the reduction in force and that CCIL rehired one of the women laid off within the same fiscal year do not adequately bring into question CCIL's assertion that it fired Nance due to budget constraints. In fact, CCIL's consideration of an eleventh-hour transfer for Nance supports an inference against discrimination since it suggests that CCIL explored alternatives before terminating him.

Nance counters that he was prevented from presenting his case in its strongest light because CCIL failed to cooperate in discovery and because the magistrate judge assigned to supervise the discovery process denied his motions to compel. But this argument fails because he failed to raise it properly in the district court. If he believed that further discovery was necessary so that he could withstand summary judgment, he should have filed a motion under Federal Rule of Civil Procedure 56(f). *First Nat'l Bank & Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 694 (7th Cir. 2004). Further, before we can conclude that the district court erroneously limited discovery, we must decide that Nance has been prejudiced. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 319 (7th Cir. 2003). He fails to demonstrate how additional discovery could have made a difference, however, and a party is not entitled to block summary judgment by asserting a general need for further discovery. *See Woods v. City of Chicago*, 234 F.3d 979, 990-91 (7th Cir. 2000).

The remainder of Nance's arguments do not merit discussion.

AFFIRMED.